## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NATIONAL CASUALTY       )
COMPANY,       )
      )
      **Plaintiff,**       )
      )
**v.**       )       **Case No. CIV-15-1222-R**
      )
**WESTERN EXPRESS, et al.,**       )
      )
      **Defendants.**       )

## ORDER

This action arises out of a pileup on March 31, 2012, involving multiple vehicles. The underlying tort liability of the various participants is the subject of multiple federal and state court actions and certain of the involved persons have settled their claims. National Casualty Company filed this action seeking a declaratory judgment regarding the limits of its liability under a policy of insurance issued to Defendant Western Express. Presently before the Court are three motions for summary judgment. Plaintiff National Casualty argues that based on the language of the Policy its liability is limited to $1,000,000 and further seeks a declaration that its limits of coverage were exhausted by the settlement of certain claims arising from the accident and thus it has no further obligation thereunder (Doc. No. 90). Defendants Butler, Cardenas, Chmil, Crittenden, Factor, Fisher, and Ori (hereinafter "injured-party Defendants") responded in opposition to the motion and filed their own motion seeking a declaration that the Policy issued by Plaintiff provides the full amount of coverage for each person injured or killed in what they consider a series of accidents. (Doc. Nos. 93 and 104). Each injured-party Defendant was either involved in or

is the personal representative of a person killed in the March 31, 2012 incident. Defendant Schneider and his employer, Defendant Western Express, the insured, seek summary judgment as well. They argue that despite the number of impacts, there was but a single "accident" under the Policy, giving rise to only a single $900,000 self-retention obligation under the Policy. (Doc. Nos. 88, 102, and 103). Western Express and Schneider responded to the Plaintiff's motion and to that of its co-defendants. (Doc. Nos. 103, 106). The Court has considered the parties' various positions and finds as follows.

At the outset the Court disposes of the suggestion by the injured-party Defendants that this Court await the termination of proceedings in the state court regarding the enforceability of an alleged settlement of the claims in the underlying tort litigation, *Western Express v. Factor*, Case No. DF-114498. The Oklahoma Court of Civil Appeals issued its decision on May 11, 2018, overturning and vacating the order of the District Court of Oklahoma County wherein that court concluded that a valid and binding settlement had been reached. On October 22, 2018, the Oklahoma Supreme Court denied Adam Factor's Petition for Writ of Certiorari, thereby mooting any argument that this Court should abstain from considering the instant motions. Accordingly, the injured-party Defendants' request that this Court await a decision from the Oklahoma state courts is denied as moot.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler*

*v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (quoting Fed. R. Civ. P. 1).

Generally, the facts underlying the March 31, 2012 incident are not disputed. At approximately 8:27 a.m. while driving through fog in the westbound lanes of Interstate 40 near the Oklahoma/Texas border, Defendant Schneider's truck hit a BMW being driven by Gorgis Ori. The two vehicles pulled off into the center median, although there are contentions that Defendant Schneider's vehicle was not completely cleared from the inside westbound lane.[1] Regardless, James Crittenden, who was behind Schneider, hit Schneider's truck, which pushed Schneider's trailer into the roadway further. This relocation set off a chain reaction of impacts that took place over the course of minutes, not all with Schneider. Schneider was employed by Western Express, the insured herein, giving rise to this declaratory judgment action.

National Casualty Company issued Policy Number CTO0124407 to Western Express, Inc. of Nashville, Tennessee for the period October 1, 2011 through October 1, 2012, providing commercial auto coverage. (Doc. No. 90-1, p. 3). The Policy included a

---

[1]  According to the OHP Accident Reconstruction Mr. Crittenden informed the Trooper that the flatbed trailer, Schneider's vehicle, was moving very slowly from the left shoulder to the right, at approximately five to ten miles per hour, when Mr. Crittenden hit him. There appears to be no dispute that the impact moved Schneider's trailer such that it was positioned across at least the inside westbound lane and that after subsequent impacts both westbound lanes were obstructed.

"Commercial Auto Coverage Part Motor Carrier Coverage Form Supplemental Declarations" page, which contained a list of coverages. Id. at p. 9. The Policy includes liability coverage for 61 covered autos and identified the limit, that is, "[t]he Most We Will Pay for Any One Accident or Loss" as $1,000,000.[2] The dispute herein revolves around certain Policy language, set forth in more detail below, because the parties disagree regarding how many "Accidents" resulted from the events on March 31, 2012.

Plaintiff argues the initial impact between Defendant Schneider and the BMW driven by Ori as well as all subsequent impacts constitute a single "Accident" and therefore its exposure is limited to $1,000,000. The injured-party Defendants argue that National Casualty's exposure under the Policy is $1,000,000 per injured or deceased person, because each is a separate "Accident" when viewed from the standpoint of the injured or deceased.[3] Plaintiff National Casualty and Defendants Western Express and Schneider contend the Declaration establishes the limits of coverage for all events of March 31, 2012 between the parties.

The Policy under "Section II – Liability Coverage, A. Coverage" provides:

> We will pay all sums an "insured" legally must pay as damages
> because of "bodily injury" or "property damage" to which this

---

[2] The Court notes that in the injured-party Defendants' motion for summary judgment and its response briefs they fail to adhere to the requirement that the brief start with a statement of undisputed facts or to respond to the movant's statement of facts. Rather, under the guise of asserting or disputing facts, the injured parties include legal arguments and case citations.

[3] The injured parties rely on the broad definition of the term "Loss" in the Policy as an additional basis for their argument that $1,000,000.00 is available to each person injured and the representative of anyone killed. The Court easily disposes of this argument, which finds no support in the coverage provisions of the Policy. The policy defines "Loss" as "direct and accidental loss or damage." Doc. No. 90-1, p. 26. The Supplemental Declarations "Limit" indicates that $1,000,000 is the most National Casualty "Will Pay for Any One Accident or Loss." Pointedly, however, Section II, Liability Coverage, the section subject to interpretation herein, does not use or reference "loss." *See, e.g.,* Doc. No. 90-1, p. 20.

insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

Doc. No. 90-1, p. 15.  It provides for a "Limit of Insurance:"

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

> All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

Id. at p. 19. "Accident," "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." *Id.* at 25.

Before addressing the interpretation of the Policy, the Court addresses the admissibility of certain evidence submitted by the parties. The injured-party Defendants would have the Court adopt *in toto* a report submitted to the District Court of Oklahoma County in certain of the underlying tort litigation drafted by a court-appointed Special Master, former United States District Judge Michael Burrage. Plaintiff insurer and Defendant insured, Western Express and its employee Thomas Schneider, object to the Court's consideration of the Special Master's report. The injured parties do not address the admissibility of the Special Master's report in any of their briefs.

The Court will not adopt the legal opinion of the Special Master and the facts as set forth therein are based on allegations, not evidence. *See, e.g.*, Doc. No. 91-1, pp. 13, 15-16 ("it is alleged by plaintiffs (and denied by defendants)"). The legal conclusions offered by

the Special Master are inappropriate for the same reasons an expert witness is not permitted to offer legal conclusions. *See Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007)("While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored.") (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir.1988)). It is the Court's obligation to determine the applicable law; issues related to the interpretation of written contracts, including insurance policies, are legal, not factual. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc.*, 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998). The Court is unwilling to abdicate its role to either the Special Master appointed by the District Court of Oklahoma County or the expert witness, Richard Dykstra, whose report the injured-party Defendants also submitted in support of their position. (Doc. No. 93-7). Additionally, the opinion offered by the Special Master has no legal effect in Oklahoma state court following the decision of the Oklahoma Court of Civil Appeals and the denial of certiorari by the Oklahoma Supreme Court.

> [F]rom our finding that the district court erred in determining there was an enforceable agreement between Factor and Western Express to settle the lawsuit, it necessarily follows that it was also error to appoint a special master and refer issues related to policy limits. For that reason, we do not consider or address the special master's interpretation of insurance policy coverage provisions and determination of policy limits. . . .

*Factor v. Western Express, Inc.*, No. 114,498 (Okla. Civ. App. May 11, 2018) Doc. No. 114-1 at 19.[4]

---

[4] National Casualty was not a party to any of the proceedings in the District Court of Oklahoma County. The Court notes that Judge Burrage's report starts and ends with the assumption that Tennessee would apply the "effects" test in this context without discussion as to the evolution of the law or the potential that Tennessee courts would not apply that test in this particular context given the language of the contract at issue. At bottom, the outcome of this case is

Next the Court must determine what law applies to this dispute. When the Court's jurisdiction is based upon diversity of citizenship, it should apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941).

> "[T]he threshold question in determining the application of choice of law rules is whether there is a true conflict, a false conflict, or no conflict." 16 Am.Jur.2d Conflicts of Law § 4. "If the law and interests of the concerned states are not in conflict, the result is deemed a 'false conflict' or no conflict at all, and no choice of law analysis need be made." 15A C.J.S. Conflicts of Law § 31. *See also Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 19, 138 P.3d 826, 831 (noting "where neither party argued a difference in Texas or Oklahoma law 'any perceived choice of law issue is contrived'"); *Roby v. Bailey*, 1993 OK CIV APP 93, 856 P.2d 1013, 1016 ("A choice of law question always involves choosing between the 'conflicting laws' of two or more states.")

*Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*, 363 P.3d 1270, 1274 (Okla. Civ. App. 2015). The parties argue between application of Oklahoma law, advocated by Plaintiff and Defendants Western Express and Schneider, and Tennessee law, endorsed by the injured-party Defendants. Each argues, however, that the result is the same regardless of which law applies. The Court assumes for the time being and for the sake of argument, that a conflict exists.

A court sitting in diversity jurisdiction applies the substantive law of Oklahoma as the forum state. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1276, 1277 (10th Cir. 2011). This includes Oklahoma's choice of law principles. *Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). "The validity, interpretation,

---

dependent on interpretation of the contractual provisions which cannot be decided without reference thereto, most notably the limit provision set forth herein.

application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties." *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787, 797 (Okla. 1991).[5] Plaintiff argues Oklahoma has the most significant relationship to the instant dispute. Defendant Western Express and Thomas Schneider agree with Plaintiff, but also argue that the public policy exception applies. The injured-party Defendants argue that Tennessee has the most significant relationship.

The Policy here was issued by the Illinois office of National Casualty to Western Express, an interstate trucking company with a Tennessee address. Oklahoma's only connection to this action is that the pileup occurred in Oklahoma. The Court's review of the pleadings in the underlying actions reveals that two individuals, Larry Barnes and Carol Newell, who settled their claims, were residents of Oklahoma. Additionally, there are allegations in at least one filing that McKinley Ranches, whose truck was involved in the pileup, was domiciled in Oklahoma. The parties advocating for Oklahoma law, however, rely primarily on the location of the accident to argue that Oklahoma has the most significant relationship to the dispute.

In *Bohannan*, the Oklahoma Supreme Court considered whether to apply the law of Oklahoma or California to determine the effect of uninsured motorist provisions in an

---

[5] The choice of law analysis employed by the Oklahoma Supreme Court has evolved since *Bohannan*, but not in a manner that impacts the outcome herein. *See O'Farrell v. State Farm Mutual Auto. Ins. Co.*, No. 12-CV-0633-CVE-TLW, 2013 WL 3820082, * 5 (N.D. Okla. July 24, 2013).

insurance policy. The accident occurred in Oklahoma between two Oklahoma drivers, one of whom had a California resident as a passenger. The passenger had UM coverage under a policy issued in California. The court was called upon to consider whether the UM benefits for the California insurance policy should be construed under California or Oklahoma law. The court enunciated the test set forth above. Subsequent thereto the Oklahoma Court of Civil Appeals, considering contractual interpretation in *Roby v. Bailey*, 856 P.2d 1013, 1015 (Okla. Civ. App. 1993), held:

> As is apparent from examining the facts in *Bohannan*, the fact the accident occurred in Oklahoma is not sufficient to give Oklahoma the 'most significant relationship with the subject matter and the parties', and if Oklahoma law is to be applied to this insurance contract purchased and issued in [Tennessee], it must be because application of [Tennessee] law violates Oklahoma public policy.

*Id.* at 1015. The Court finds the involvement of three Oklahoma residents in the sixteen-vehicle pileup combined with the fact that the accident occurred in Oklahoma insufficient to give Oklahoma law the most significant relationship. Accordingly, Oklahoma law would apply to the exclusion of Tennessee law, only if Tennessee law violates the public policy of Oklahoma.

Neither the insurer nor the insured directly argues that application of Tennessee law would violate Oklahoma public policy. The mere existence of a conflict with Oklahoma law is not tantamount to a violation of public policy.[6]  Defendants Western Express and Schneider argue that the NCC Policy was required to comply with Oklahoma law to the

---

[6] The issue of a conflict is somewhat academic until such time as the Court concludes what law Tennessee would apply and that it conflicts with Oklahoma law. For purposes of this discussion the Court assumes the injured-party Defendants' position that Tennessee would apply the "effects" test and concludes that $1,000,000 of coverage would apply to the claims of each injured or deceased participant in the pileup.

extent that its policy is called upon to afford coverage to its insureds in Oklahoma. Although Western Express is an insured, it is not an insured in Oklahoma. There is no contention that the Policy does not provide the minimum coverage mandated by Oklahoma law. That the Policy specifically provides that limits of coverage will be increased to meet the compulsory or financial responsibility law of the jurisdiction where the covered auto was being used does not mean that there is anything in the application of Tennessee law that would violate Oklahoma public policy.[7] Accordingly, to the extent there is a conflict, Tennessee law would apply.

Next, the Court must discern Tennessee law and whether it conflicts with Oklahoma law. The general rules of contractual interpretation in both states are the same. As in Oklahoma, Tennessee courts generally interpret insurance policies "in the same manner as any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). The Court's goal in resolving a dispute concerning contract interpretation is to determine the intention of the parties based on the "usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). If possible, the Court must construe all provisions in a contract "in harmony with each other ... to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Id.* The entire policy, including insuring clauses and exceptions thereto, is read as a whole. *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782

---

[7] Plaintiff also argues that there is no conflict between the outcomes under Oklahoma and Tennessee law, and that the result is the same regardless. The parties all acknowledge that the outcome is dependent on whether Tennessee would apply the "effects" test to this action.

(6th Cir. 1986). In addition, exceptions should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co.*, 972 S.W.2d at 8. The Tennessee Supreme Court provided a sequence for consideration of an insurance policy: (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements. Id. at 7. This sequence provides a logical starting point for the Court's analysis.

The Declaration page provides that the Policy consists of "Commercial Auto Coverage Part" and the Supplemental Declarations, quoted above, indicate that the most National Casualty will pay for "Any One Accident or Loss" is $1,000,000. As set forth above, the insuring agreement provides "Liability Coverage;" that is, National Casualty agreed to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage". The exclusions are contained within the Policy's "Limit of Insurance", quoted above.

The injured-party Defendants assert that the term "accident" as used in the Policy is ambiguous, and therefore should be broadly construed to find coverage.[8] (Doc. No. 93, p. 21). National Casualty, Western Express, and Thomas Schneider assert the language of the

---

[8] The injured-party Defendants were not parties to the contract, and the insured herein presents arguments consistent with those of the insurer; accordingly, this is a unique situation where the insured is not arguing ambiguity in the contract and demanding interpretation in its favor.

Policy as its relates to liability coverage, including the term "accident" is unambiguous and that the events of March 31, 2012 should be construed as a single accident with limits of $1,000,000 under the "Limits of Insurance" exclusion.

An insurance policy provision is ambiguous if more than one reasonable interpretation exists. *Am. Justice Ins. Reciprocal*, 15 S.W.3d at 815. However, "[a] strained construction may not be placed on the language used to find ambiguity where none exists." *Vencor, Inc. v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 635 (6th Cir. 2003) (quoting *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975)). In addition, ambiguity will not be found simply because parties disagree as to the interpretation of provisions. *Id.*

Defendants' interpretation of Tennessee law, specifically their contention that there were as many accidents as there were injured or killed parties, is premised on a 1954 case from the Supreme Court of Tennessee, *Kuhn's of Brownsville, Inc. v. Bituminous Cas. Co.*, 270 S.W.2d 358 (Tenn. 1954). Therein the court considered the extent of an insurer's liability for two collapsed buildings. The first, adjacent to the east of the insured property, collapsed the day excavation work was performed on the insured building. The second, to the west of the insured property, collapsed two days later. The court noted that the May 27, 1952 excavation work on the insured property was the proximate cause of both collapses. The first question presented was whether an exclusion exempted the insurer from coverage for personal property loss caused by excavation. After answering the first inquiry in the negative, the court was called upon to assess the amount of coverage available. The court's single-paragraph analysis provides little insight into the rationale behind its decision:

If the losses complained of by the complainant were for one accident, the liability would be $10,000, but if there were two separate accidents, then complainants would be entitled to recover twice the amount. The second collapse did not happen until two days after the first, and we think it clear that there were two accidents involved herein. If the excavation was a single act, and constitutes a single accident, then the question comes as to when the accident occurred. The owners on the west suffered no loss and experienced no unforeseen event until the 29th.

We are of the opinion that the lower court was correct that there were two separate unforeseen events.

*Id.* at 65-66. As a result of *Kuhn's*, commentators concluded that Tennessee follows the "effects" test for construing insurance contracts, without regard to context.[9] *See, e.g.,* 64 A.L.R.4th 668 (originally published in 1988).

The "effects" theory requires consideration of coverage from the vantage point of the victims, that is, there are as many "accidents" as there are victims. Under the effects theory, the entire policy limit is available to each injured party. The primary alternative to the "effects" test is the "cause" test, whereby "the number of occurrences is determined according to the number of separate and intervening human acts" giving rise to the claims under the policy." *Nicor, Inc. v. Associated Elec. and Gas Ins. Services, Ltd.*, 860 N.E.2d 280, 284 (Ill. 2006).

Neither the parties' briefs nor the Court's independent research reveals any Tennessee case applying *Kuhn's* in the context of automobile insurance much less in the

---

[9] In *CHS/Community Health Systems, Inc. v. Lexington Ins. Co.,* No. 3:11-cv-00449, 2013 WL 6500477,*7 (M.D. Tenn. Dec. 9, 2013), *vacated by Quorom Health Resources, LLC v. Lexington Ins. Co.*, 2015 WL 13505211 (M.D. Tenn. Feb. 25, 2015), the court declined to apply the effects test to the definition of "occurrence" for purposes of determining the number of self-insured retentions due, in part because "courts look to the effects test where multiple reasonable interpretations of the language at issue exist, rendering the policy ambiguous," and the only reasonable interpretation of the policy was not ambiguous. Other courts have noted that the differing theories are employed for construction of the word "accident" when it is undefined in the policy. *See State Auto Property and Cas. Co. v. Matty*, 690 S.E.2d 614 (Ga. 2010).

multi-vehicle context. Although the injured-party Defendants rely on *Kuhn's* and its progeny, the Court declines to do so given that (a) the express language of the Policy herein does not support application of *Kuhn's*, where the court did not address the policy definition of accident or other relevant policy terms; and (2) the rationale provided by the Tennessee court in *Kuhn's*, focusing on the two days separating the two collapses, is absent in this case, where the injuries and fatalities occurred on the same day at nearly the same time. *See also Brooks v. Memphis & Shelby Cnty. Hosp. Auth.*, 717 S.W.2d 292, 297 (Tenn. Ct. App. 1986)(injury on one day and death days later by virtue of two separate acts of negligence by two employees were two accidents for purposes of recovery under the Governmental Tort Liability Act).[10]   Both *Kuhn's* and *Brooks* can be distinguished from

---

[10] A recent case from the Western District of Tennessee, *Travelers Indemnity Company v. W.M. Barr & Co.*, 2:08-CV-02649-BBK-dkv, 2011 WL 13118857 (W.D. Tenn. Oct. 18, 2011), *vacated upon settlement and motion of the parties*, 2013 WL 12335409 (W.D. Tenn. Mar. 7, 2013), disputed characterization of Tennessee as an "effects" state.

> In its reply brief, North American asserts that "Tennessee follows the 'effects' test in determining the number of occurrences for insurance coverage purposes", under which "each claimant suffered a separate injury, and thus, each claim is a separate occurrence." (Reply Further Support 2.) North American cites two Tennessee cases as support, *Kuhn's of Brownsville v. Bituminous Cas. Co.,* 270 S.W.2d 358 (1954), and *Brooks v. Memphis and Shelby County Hospital*, 717 S.W.2d 292 (Tenn. Ct. App. 1986). The Court finds the assertion to be inaccurate. In *Kuhn's,* the Court, with little analysis, concluded that the collapse of two buildings, two days apart, was two accidents for insurance purposes. This opinion predates the development and near-universal adoption of the cause theory of liability and has never been relied upon by any Tennessee court. Consequently, the Court does not regard Kuhn's as having any significant precedential value. Even if *Kuhn's* were to be deemed binding authority, its facts are easily distinguishable from those of the present case. Furthermore, the holding is very narrowly framed and does not purport to proclaim a principle of broad application and goes against the analysis employed by nearly every other jurisdiction. *See Van Zanen v. Qwest Wireless, L.L.C.,* 522 F.3d 1127, 1132 (10th Cir. 2008) (treating the existence of a substantial majority view as useful guidance on how the state supreme court would decide the issue).

> In *Brooks*, the Tennessee Appeals Court noted that American Law Reports (A.L.R.), as a result of the *Kuhn's* decision, "places Tennessee in the category of construing 'one accident' from the point of view of the persons injured rather than from the point of view of the proximate cause of the accident." 717 S.W.2d at 297. The court, however, took no stance as to whether A.L.R.'s categorization was accurate, and concluded that "effects" and "cause" theories would lead to the same holding given the particular facts before it.

Id. at *3, n. 2.

the instant case on the basis of timing. In both of those cases, the time between injuries

exceeded two days. Here, the impacts as well as their affiliated injuries and deaths were

separated in certain cases by minutes.

> Importantly, *Brooks* considered the temporal proximity of the cause and
> effect. See [Brooks, 717 S.W.2d] at 296. ("If cause and result are
> simultaneous or so closely linked in time and space as to be considered by
> the average person as one event, the courts have invariably found that a single
> accident within the meaning of the accident clause of the policy has occurred,
> while if enough time has elapsed between the injuries or damages to the
> various items involved or if the latter are widely separated in space, the courts
> have been inclined to allow separate claims even though they sprang from
> the same cause. Generally speaking, it may therefore be stated that the
> aggregate of events resulting from insured's negligent act, such as several
> collisions, constitutes one accident, provided there is a close connection in
> time and place and a single sequence of cause and effect embracing the entire
> aggregate of events.

*Sears, Roebuck & Co. v. Light*, No. 2:13-cv-02600-JTF-tmp, 2014 WL 12531101 (W.D.

Tenn. Dec. 9, 2014).

As noted above, the Policy language herein provides the framework of this Court's

analysis. The NCC Policy contains a limitation not contained in *Kuhn's*. Courts interpreting

similar exclusions have concluded that by its terms, such language indicates the parties'

intention to rely on a cause theory not an effects theory.

> The "effects test" is a relatively old rule that has fallen out of favor with the
> courts. Most of the courts that originally adopted this approach have
> abandoned it, because treating each separate injured person or damaged
> property as a separate occurrence effectively converts a "per occurrence"
> policy into a "per claim" policy, which runs counter to the language of the
> occurrence-based coverage. This effects tests also conflicts with the
> reasonable expectation of the contracting parties, who would expect "an
> occurrence" to mean something akin to "an accident," expanded of course to
> also include "continuous or repeated exposure to substantially the same
> general harmful conditions." Considering, for example the case of an

explosion that injures many bystanders, the ordinary understanding of "accident" would refer to the explosion, not to the individual injuries.

Restatement of the Law of Liability Insurance § 39 Number of Accidents or Occurrences (2017). "Because the effect theory determines the number of accidents by the number of persons who sustained injuries (and the number of vehicles or other property that sustained damage, it has sometimes been called the 'windfall' theory, has been said to violate 'common sense,' and 'has not been applied to automobile liability cases, perhaps because automobile accidents are more readily understood than cases involving damage to realty.' Ohlsson at 2.05[3][b]. Its rejection has therefore been encouraged." *State Auto Property and Cas. Co. v. Matty*, 690 S.E.2d 614, 618. (Ga. 2010).[11]

> Questions have arisen in a number of cases as to what constitutes a single accident or a single occurrence within the meaning of a clause in a liability policy limiting the liability of the insurer to a specified amount "per accident" or "per occurrence." With regard to automobile liability insurance, the courts have generally been of the opinion that "per accident" clauses should be construed on the basis of the cause of the accident rather than its effect. Consequently, courts have held that where one proximate, uninterrupted, and continuing cause results in injuries to more than one

---

[11] In *TIG Insurance v. Merryland Childcare & Dev., Ctr.*, No. 04-2666 R, 2007 WL 316571 (W.D. Tenn. Jan. 31, 2007), the court evaluated coverage under a policy issued to a childcare center with regard to claims alleging the sexual abuse of minor children by an employee. The allegations resulted in nine lawsuits by parents against the childcare center. The policy at issue included the following language:

> All acts of "sexual abuse occurrence" by an actual or alleged perpetrator or perpetrators, including "negligent employment" of such perpetrator or perpetrators, shall be deemed and construed as one occurrence which takes place when the first act of sexual abuse or molestation occurs, regardless of the number of persons involved, or the number of incidents or locations involved, or the period of time during which the acts of sexual abuse or molestation took place.

*Id.* at *3. Quoting *TIG v. Smart Sch.*, 401 F. Supp. 2d 1334, 1347 (S.D. Fla. 2005), the *Merryland* court noted that "the definition of 'sexual abuse occurrence' addresses whether separately covered claims will be treated as one or more occurrences for the purposes of determining the extent of TIG's exposure under the applicable policy." Id. at *6. The court concluded that the acts of abuse against the various victims as well as the negligent hiring were one occurrence under the Policy. In concluding its ruling the court declined "to rule in favor of the Defendant Parents based solely on public policy grounds . . . being mindful of the admonition against rewriting contracts. . . . Nor can the Court refuse to grant properly based declaratory judgment in favor of [the insurer] simply because doing so may result in victims of the heinous acts . . . being unable to collect damages for their injuries." *Id.* at *8. The court made no mention of either a causation or effect theory, focusing on the language of the policy.

> person or damage to more than one item of property, there is a single accident
> or occurrence within the meaning of the policy limiting the insurer's liability
> to a given amount for each accident or occurrence.

12 Couch on Ins. § 170:7 (footnotes omitted). The phrase "one accident" has been used to limit an insurer's liability for nearly a century. In *Hyer v. Inter-Insurance Exchange Auto. Club*, 246 P. 1055 (Cal. Ct. App. 1926), the insured collided with an oncoming vehicle which broke the insured's steering wheel. As a result, the insured lost control and his vehicle deflected and hit another car. The court ruled there was a single accident, and noted that "the use of the word 'claims,' in the plural, in connection with the words 'one accident,' clearly indicates that the parties understood that there might be several claims arising from one accident–as, for instance, where, as here, the vehicles of two or more persons are injured–but that though there might be several injuries and therefore several claims, the total liability of the insurer should not exceed $1,000 if the claims all arose from one accident." Id. at 1059.[12]

In *Banner v. Raisin Valley, Inc.*, 31 F. Supp. 2d 591 (N.D. Ohio 1998), the court considered a multi-vehicle incident and a policy containing language nearly identical to this action. The insured entered a lane of oncoming traffic and hit a car, then hit a pickup traveling a few car lengths behind, and then hit an SUV behind the pickup before hitting a

---

[12] *See also United Services Auto. Assn. v. Baggett*, 209 Cal. App. 3d 1387 (Cal. Ct. App. 1989), wherein the court considered a per-accident limit in a case where the insured first hit a car from behind. The insured and the person driving that car pulled over to the side, left their vehicles and were discussing the accident when a third vehicle struck the insured's car from the rear, driving that vehicle into the driver of the first car and her car, killing her. The court concluded it was a single accident for coverage purposes; "the insurance policy provisions limiting maximum liability 'for any one auto accident' unambiguously contemplate two consecutive collisions as occurred here to be one accident." *Id.* at 1396.

fourth car. The court had little difficulty concluding there was a single accident for coverage purposes.

> The policy definition of accident refers to "continuous" or "repeated" exposure to the same conditions. Such definition contemplates multiple injuries resulting from a single cause. The limitation of liability section clearly states that the limit applies regardless of the number of vehicles involved in the accident. Thus, "accident," as defined in the policy, encompasses accident that involve multiple injuries and multiple vehicles.

*Id.* at 592 (footnotes omitted).

In *Matty*, the court considered coverage for a vehicle that struck two bicyclists in succession. The policy at issue had a $100,000 limit for "each accident," which was the "maximum limit of liability for all damages resulting from any one auto accident." The policy did not otherwise define "accident."

> The policy at issue in this case, viewed as a whole, shows a clear intent to limit liability in accidents involving multiple vehicles. The term "each accident" appears in the limitation of liability section of the policy, which provides that the limit of liability of $100,000 for "each accident" is "the most [State Auto] will pay regardless of the number of: 1. 'Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident." Automobile accidents involving multiple vehicles and multiple injured parties (insureds and third parties) are an everyday occurrence on our roads. Recognizing this reality, this contractual language contemplates that there can be a single accident in which there are multiple vehicles, injured parties, and claims and provides that for that type of accident, there will be a liability limit of $100,000. See *Banner v. Raisin Valley, Inc.*, 31 F. Supp. 2d 591, 592 (N.D. Ohio 1998) (a limitation of liability "per accident" regardless of number of vehicles indicates "accident" is meant to encompass multiple vehicle collisions). Moreover, by placing the term "accident" in the limitation of liability section, "[m]anifestly, it was intended that the policy have monetary limits of coverage." *St. Paul-Mercury Indem. Co. v. Rutland*, 225 F.2d 689, 692 (5th Cir.1955).

* * *

> Under the claimant's construction, the policy's $100,000 limitation of liability "regardless of the number of ... vehicles involved" would be meaningless in almost any collision involving multiple vehicles, as State Auto would have to pay $100,000 for each impact. That is plainly not the intent of the contract.

*State Auto Property and Cas. Co. v. Matty*, 690 S.E.2d at 612-13.[13]

This case bears similarity to *Dutch Maid Logistics, Inc v. Acuity*, Nos. 91932, 92002, 2009 WL 1019857 (Ohio Apr. 16 2009), with regard to the type of accident and policy terms at issue. The liability policy issued to Dutch Maid included the same liability language, the same limitation regardless of the number of vehicles involved, the same definition of "accident," and a policy limit of $1,000,000 per accident. *Id.* at *3. Five claims were filed against the insured from other vehicles involved in a multi-vehicle incident; the insurer argued there was but a single accident for purposes of policy limits, the court stated:

> A plain reading of the policy language establishes that the policy defines an "accident" as one encompassing as many vehicles and injuries as caused by the same tortfeasor. The trial court, in rendering its decision, correctly concluded that there was but one continuous accident that caused all the bodily injury claims that flowed from it.
>
> * * * A simple, plain reading of the contract reveals that its drafters included "cause" language in it, not "effect" language. The trial court did not err in applying the meaning of that language to limit the policy to $1 million in the aggregate.

*Id.* at *4.

In assessing the number of accidents under a similar limitation in a 3-vehicle incident, the Supreme Court of Iowa noted,

---

[13] At trial a jury concluded that the insured regained control of her vehicle between the first impact and the impact with Plaintiff Matty, such that a second intervening cause preceded the second accident. *State Auto Prop. and Cas. Co. v. Matty*, 438 Fed. Appx. 820 (11th Cir. 2011).

As noted, the policy issued by Farmers to Crivaro leaves the term "accident" undefined. Yet the clause stating that the insurer's liability is limited "regardless of the number of . . . [v]ehicles involved in the auto accident" is an important clue to its meaning. See *Boelman*, 826 N.W.2d at 01 ("We read the policy as a whole when determining whether the contract has two equally plausible interpretations, not seriatim by clauses."). This language sweeps multi-vehicle events within the definition of a single accident. And if every impact constituted a separate accident, this language would have little or no meaning because the probability of more than two vehicles colliding at the same instant is very low. *Id.* at 502 ("We will not interpret an insurance policy to render any part superfluous, unless doing so is reasonable and necessary to preserve the structure and format of the provision.")

*Just v. Farmers Auto Ins. Ass'n*, 877 N.W.2d 467, 472 (Iowa 2016).

The Court finds that, given the facts upon which the parties agree, there were two "accidents" for purposes of the National Casualty policy. The initial impact between the BMW driven by Ori and the semi-truck driven by Defendant Schneider was the first. After that impact, both drivers moved their vehicles to the interior shoulder, although it is alleged that Schneider's truck protruded into the adjacent westbound lane or was moving very slowly on the shoulder and into that lane. There is no evidence that after Crittenhen hit Schneider's trailer that Schneider moved his truck[14]; rather, it was moved further into the roadway by subsequent impacts ultimately obstructing the westbound roadway until the accident site cleared. The impact with the BMW was independent of the subsequent impacts; those subsequent impacts, however, were caused or affected by one another and were the result of each driver being subjected to the same general condition, the obstructed westbound highway. As alleged in the underlying cases, the injuries and deaths were the

---

[14] According to Schneider's statement to the OHP, he was hit twice in rapid succession after he returned to his vehicle to call 911, and thrown from the cab on the second impact.

result of Defendant Schneider's alleged failure to move the truck completely off the roadway.[15] In *Illinois National Ins. Co. v. Szczepkowicz*, 542 N.E.2d 90 (Ill. App. 1989), the insurer sought a declaratory judgment regarding the extent of its obligation under a liability policy.

> Szczepkowicz was driving a tractor-trailer unit with an inoperative left rear side clearance light on its trailer. He steered the tractor-trailer out of a private driveway on the east side of Route 41, entered the northbound lanes and proceeded west into the crossover. Due to traffic in the southbound lanes, he was forced to stop with the rear portion of his vehicle effectively blocking both northbound lanes.

> At the same time, the Davis vehicle was proceeding northbound in the curb lane, and struck the rear wheels of the stopped tractor-trailer. According to Davis, the tractor-trailer moved forward approximately 12 feet "almost immediately" after the collision, and then stopped again. At that point, according to the agreed statement of facts, Szczepkowicz failed to completely remove the vehicle out of all lanes of traffic; he did not back the tractor-trailer off the roadway, proceed into the southbound lane, or pull onto the median strip parallel with the road. Five minutes later, an automobile driven by Jan Banek and occupied by three passengers, his parents, Anna and Eugeniusz, and now-deceased brother Jason (the "Banek passengers") travelling in the left northbound lane, smashed into the side of the stopped tractor-trailer, forward of the rear wheel area which David previously had struck. At the time of the second impact, the rear wheels of the trailer were situated on the line diving the two northbound lanes.

> * * *

> Two separate, distinct collisions occurred five minutes apart[,] . . . there was no single force, nor an unbroken or uninterrupted continuum that, once set in motion, caused multiple injuries [and] . . . the second collisions did not result from continuous or repeated exposure either to the same or to substantially the same conditions.

---

[15] The injured-party Defendants argue that Defendant Schneider's failure to place cones behind the portion of his vehicle protruding into the roadway was the cause of the first post-Ori impact and that his negligence persisted when he failed to place cones after the subsequent impacts.

Id. at 91, 93. The facts as set forth by the parties do not establish liability among those involved in the accident nor should they, given the pending federal and state court litigation; questions of contributory negligence abound given the conditions on the date of the accident. However, there are sufficient undisputed facts from which the Court can conclude that as to bodily injury/property damage caused by the impact between Defendant Schneider and the car driven by Ori with Isso as a passenger, there is a $1,000,000 coverage limit. The remaining impacts share $1,000,000 in available coverage contingent upon a finding of liability as to Defendants Western Express/Schneider.

The cases regarding the "cause" approach often address the issue of the tortfeasor's control over the vehicle. *See Progressive Preferred Ins. Co. v. Derby*, No. F-01-002, 2001 WL 672177 (Ohio June 15, 2001). The injured-party Defendants argue that, if the Court uses the "cause" test, the control approach and the separation by time approach mandate that more than one accident occurred for coverage purposes. Even if this Court considered control and timing as the dispositive issues, the result would be the same. From the parties' submissions, Mr. Schneider was in control at the time he impacted the BMW, and at best maintained control until he was hit from behind by Mr. Crittenden. After the impact between Mr. Schneider's semi-truck and the Crittenden vehicle, his ability to avoid additional impacts was not dependent on his ability to maintain control of his vehicle; his vehicle was at that time relocated into the westbound lanes of traffic by the collisions. Although he may have had the ability to control his vehicle until he was hit by Crittenden, he never gained control of the situation. *Id.* at * 4.

If timing is considered, the outcome remains the same. According to the testimony of Jana Harris, representative from South Western Oklahoma Development Authority, the first 911 call regarding the incident was received at 8:27:52 a.m. on March 31, 2012, indicating an accident between a truck and a car. (Doc. No. 88-2, p. 9). By 8:30:18 a.m., the impacts between the vehicles had ended. Thus, there was no significant passage of time between Mr. Crittenden hitting Mr. Schneider and the vehicle at the end of the pileup, Mr. Thomas. *See American Family Mut. Ins Co. v. Wilkins*, 179 P.3d 1104, 1114 (Kan. 2008) ("Collisions with multiple vehicles constitute one occurrence when the collisions are nearly simultaneous or separated by a very short period of time and the insured does not maintain or regain control over his or her vehicle between collisions. When collisions between multiple vehicles are separated by a period of time or the insured maintains or regains control of the vehicle before a subsequent collision, there are multiple occurrences.").

As a result of the above, the Court concludes there is no conflict between Tennessee and Oklahoma law. In *Republic Underwriters Ins. Co. v. Moore*, 493 Fed. Appx. 907 (10th Cir. July 20, 2012), the court held that all of the injuries arising from contaminated food prepared by a restaurant constituted a single occurrence, despite sickening hundreds of people with E. coli over a period of ten days. The court considered it a single occurrence even though the contaminated food originated from two locations, a restaurant and a catered event at a church. The court adopted the position of the insurer that the injuries were caused by the continued preparation and service of contaminated food, that there was but one proximate cause of all the injuries, which was contamination originating at the restaurant. Id. at 911-12. Oklahoma utilizes the same cause test the Court predicts would

apply in Tennessee, and as a result, there is no conflict, the principles set forth above would apply, and as the Court concluded, there would be two "accidents" and $2,000,000 in coverage available from the National Casualty Policy.[16]

National Casualty asks the Court to enter a declaratory judgment finding that the limit of coverage is $1,000,000, which is subject to the $900,000 self-insured retention obligation of Western Express under the Policy, that the coverage has been exhausted by virtue of the settlement of certain claims arising from the March 31, 2012 impacts and that it has no further obligation under the Policy. The facts presented to the Court do not permit the Court to determine whether Plaintiff's obligations under the Policy have been fulfilled. Although certain claims were settled, there is no indication in the record as to the amount of the settlements so as to fully grant Plaintiff's motion. Additionally, with regard to the issue of the self-insured retention, the parties' briefs are inadequate to permit the Court to draw any conclusions. The Court finds that the maximum amount of National Casualty's liability for bodily injury with regard to the incidents of March 31, 2012 is $2,000,000.00 because there were two "accidents" under the terms of the Policy, without consideration of the self-insured retention. Judgment shall be entered accordingly.

IT IS SO ORDERED this 19th day of November 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[16] In light of the Court's conclusion it need not address Plaintiff's argument regarding the MCS-90 endorsement. However, the Court notes that Plaintiff cited to no legal authority for the proposition that the Policy must be construed consistently with the endorsement.